IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

DONALD KARPER, JR.,     )
     )
     Plaintiff,     )
     )
v.     )
     )     Case No.2:11-cv-0055
CASIE HARRIS, in her individual and     )     Judge Trauger/Brown
official capacity, and BRAD STAFFORD,     )     **Jury Demand**
in his individual and official capacity,     )
     )
     Defendants.     )
     )
     )

To:    The Honorable Aleta A. Trauger

<u>**REPORT AND RECOMMENDATION**</u>

Presently pending before the Magistrate Judge is Defendants' Motion for Summary Judgment. (Docket Entry 46). Plaintiff has not filed a response. For the reasons set forth below, the Magistrate Judge **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED** with **PREJUDICE.**

I.  INTRODUCTION

Plaintiff Donald Karper Jr., a former inmate at Jackson County Jail, filed this suit against Casie Harris and Brad Stafford in their individual and official capacities on May 20, 2011. (Docket Entry 1). Plaintiff brings a § 1983 action, claiming that he was denied medical treatment and that his due process rights were violated. He also alleges several violations of Tennessee state law. Plaintiff seeks monetary relief and an injunction to force compliance with

1

the state laws the Jail has allegedly violated.  Plaintiff also seeks legal fees associated with the

suit.

## II.  BACKGROUND

Defendants filed this motion for summary judgment on May 18, 2012.  Because Plaintiff

did not file a response, the Magistrate Judge adopts Defendants' statement of facts as true.  *See*

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (finding that, in the

absence of a response to a dispositive motion, "a court's reliance on the facts advanced by the

movant is proper and sufficient.").  The Defendants' statement of facts reads as follows:

On November 5, 2009, Donald Karper Jr. pled guilty to one count of possession of drug paraphernalia.  He was sentenced to eleven months, 29 days, but was given probation instead of jail time.  On August 5, 2010, a Violation of Probation was issued for his arrest due to a positive drug test and a warrant was issued the following day.

On August 10, 2010, Karper was working on a roof performing a roofing job for Sean McClain.  While working, Karper fell from the roof, injuring his shoulder.  That evening, his girlfriend took him to the emergency room at Cookeville Regional Medical Center.  From there he was referred to Dr. Carl Holloman, an orthopaedic surgeon.  Karper saw Dr. Holloman the next morning.  Holloman diagnosed him with a third degree separation of his shoulder.  However, there was nothing that they could do to treat his shoulder at that time due to the swelling.  Therefore, Holloman instructed him to come back on the 20th to determine whether the shoulder could be "popped" back into place or whether it would require surgery.

Karper called his parole officer either after leaving the emergency room or the doctor's office to check on the warrant for violation of probation which was expected from Jackson County.  Karper turned himself into the Jackson County Sheriff's Department on August 11, 2010 and was booked into the Jackson County Jail (the "Jail").  Interestingly, Karper did not advise of his shoulder injury upon booking when completing his Medical Questionnaire.  Karper appeared in court on August 16th at which time he pled guilty to the probation violation and requested that his sentence be put into effect.

Shortly after he entered the Jail, Karper began requesting a medical furlough in order to go back to Dr. Holloman.  He claims that he discussed the issue with Sheriff Collier on August 16, 2010.  This was put into a Request/Grievance Form on August 16, 2010.  On August 19, 2010, Casie Harris replied to this with a note which stated that neither Sheriff Collier nor she could

2

grant a medical furlough and that this request must go through Judge Durham. Five days later, on August 24, 2010, Karper submitted a Request to the shift supervisor asking for a six-hour furlough to see the doctor. Sgt. Debi Gillihan responded on August 25, 2010 stating that the Request had been turned over to Nurse James. She also indicated that she needed Karper to execute a release of medical information. In addition, she advised that he would be notified of any doctor's appointments at the time of transport. Finally, she stated the following: "Medical furloughs may be granted upon the recommendation of the Facilities Medical Physician." This request was turned over to the medical team. On August 25, 2010, Nurse James spoke with Dr. Beaty concerning the possibility of a medical furlough. After speaking with Dr. Beaty, Nurse James stated that "inmate was given medical clearance for medical furlough" on August 25th. On August 31, 2010, Dr. Beaty noted that the plaintiff "needs furlough for the worker's comp." The Jail did not grant the furlough due to recent events in Jackson County concerning the improper granting of furloughs and required any furlough to be granted by the court system. However, an appointment was made for the Jail to transport Karper to Dr. Holloman for an appointment on September 3, 2010 and 8:45 a.m.

On Sept. 3, 2010, the County attempted to transport Mr. Karper to Dr. Holloman's office, but he refused to go. He claimed that he would not permit the Jail to transport him because he believed that Dr. Beaty had the authority to grant him a furlough and did so on August 31, 2010. Karper finally wrote Judge Durham a letter on September 15, 2010 in which he requested an early release. The hearing for this motion was set for November 1, 2010. At the hearing, Judge Holloman released him effective November 1, 2010.

After his release, Karper did not go back to see Dr. Holloman. Within a couple weeks after his release, he did contact Dr. Holloman's office. However, he still owed approximately $171.00 from the previous visit. As of April 10, 2012, Karper still had not paid Dr. Holloman for this visit, nor returned for any follow up treatment of his shoulder. The only other doctor who he has seen is his primary care physician, Dr. Cox. However, Dr. Cox has not provided any treatment for his shoulder. He also has no appointments to see any other physician for his shoulder.

(Docket Entry 48) (citations omitted).

Together with their motion and accompanying memorandum, Defendants also filed excerpts from Plaintiff's deposition and declarations of Casie Harris, Deborah Gillihan and Brad Stafford. (Docket Entry 50). The Magistrate Judge has reviewed these documents as well.

### III.  LEGAL DISCUSSION

**A.  Standard of Review for a Motion of Summary Judgment**

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a light most favorable to the opposing party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).  Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  If the non-moving party fails to do so, then summary judgment, if appropriate, should be granted for the moving party.  *Id.*

However, "a party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgment as a matter of law," even if the non-moving party fails to respond. Fed. R. Civ. P. 56(c). The trial court's duty is to "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Guarino*, 980 F.2d at 407. In addition, "reasonable inferences must be considered if apparent from the designated evidence and favorable to the non-moving party." *Id.*

**B. Individual Capacity Claims Under § 1983**

In order to prevail on a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a right secured by the Constitution of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). Negligence alone cannot form the basis of a § 1983 action. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

### 1. Deliberate Indifference

Deliberate indifference to an inmate's medical needs can constitute "unnecessary and wanton infliction of pain" that can amount to a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To show a deliberate indifference has amounted to a violation, the plaintiff must prove objective and subjective elements.

To satisfy the objective element, the injury must be sufficiently serious. In the context of "conditions of confinement" cases, only deprivations of essential food, medical care or sanitation

can amount to an Eighth Amendment violation. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir.

2010). A medical need is sufficiently serious when it has been diagnosed by a physician as

mandating treatment, or when it is so obvious that a layperson would easily recognize the

necessity for a doctor's attention. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir.

2004). An inmate must place verifying medical evidence in the record to establish the

detrimental effect of the delay in medical treatment to succeed. *Napier v. Madison County*, 238

F.3d 739, 742 (6th Cir. 2001). In *Napier*, a jail denied dialysis treatment an inmate suffering

from complete kidney failure. The inmate had told the jail that missing treatment was "no big

deal," but once in confinement started calling for his scheduled dialysis. The Court upheld

summary judgment for the defendants, as the inmate failed to produce any medical evidence that

the delay in dialysis caused a detrimental effect. The Court noted that the inmate failed to attend

his scheduled dialysis even after his release after 29 hours.

To satisfy the subjective element, the plaintiff must show that prison officials knew of,

and acted with deliberate indifference to, an inmate's health or safety. *Flanory*, 604 F.3d at 253.

The plaintiff must show that the defendant knew of and disregarded an excessive risk to inmate

health or safety. The official must have "a sufficiently culpable state of mind" in denying

medical care. The official must both be aware of facts from which an inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference.

Here, Plaintiff has not alleged any facts that could amount to a constitutional violation.

Plaintiff has not shown that the deprivation of medical treatment was sufficiently serious.

Additionally, Plaintiff failed to show that Defendants knew of and disregarded an excessive risk

to his health or safety. Since both elements of the claim fail, Plaintiff cannot recover from

Defendants in their individual capacities based on an Eighth Amendment claim.

Crucially, Plaintiff has failed to provide any medical evidence suggesting that he suffered any kind of injury due to the delay in treatment. A separated shoulder is not the type of injury that a layperson could identify as requiring immediate attention from a doctor. In addition, much like in *Napier*, Plaintiff has failed to treat his injury since his release from jail. Even if Plaintiff had proven some injury, his failure to take the Jail-provided appointment on September 3 would have complicated the claim significantly.

Plaintiff has also failed to show that either Harris or Stafford were aware of facts from which they could infer that a substantial risk of serious harm existed. On Harris' part, Plaintiff has provided insufficient evidence that Harris had inferred a serious risk to the health of the Plaintiff and was deliberately indifferent to that risk. Plaintiff provides no evidence that a few-day delay in operating on a separated shoulder constituted a serious risk to health, and the fact that Plaintiff denied treatment in early September suggests that Plaintiff agreed at the time. For Stafford's part, Plaintiff provides no evidence that Stafford had any agency in the matter.[1]

2.  Due Process

While there is no federal constitutional right to a furlough, a state can create a liberty interest protected by the due process clause. *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008). In this context, a state-created liberty interest can only exist as a freedom from a restraint which would constitute an atypical and significant hardship in relation to the ordinary incidents

---

[1]Plaintiff's only evidence that Stafford even knew of the issue comes from a conversation Plaintiff had with his mother. Allegedly, Stafford told Plaintiff's mother that he had all of Plaintiff's paperwork. It is unclear when this conversation took place.

of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)[2]. Once such an interest is

established, the court then turns to what kind of process is due. *Id.*

Tennessee Code § 40-35-316(a), the relevant statute in this case, reads in part as follows:

In any case in which a defendant has been sentenced to a local jail or workhouse subject to the provisions of § 40-35-212, the sentencing court shall have jurisdiction to grant furlough for any medical, penological, rehabilitative or humane reasons, upon conditions to be set by the sentencing court.

In this case, it is clear that the state has not created any liberty interest protected by the

Due Process Clause. A furlough is certainly not a freedom from an atypical and significant

hardship in relation to ordinary prison life; it is a freedom from ordinary prison life itself. To say

otherwise would be to suggest ordinary prison time is atypical and a significant hardship in

comparison to itself.

In addition, the state statute clearly gives very wide discretion to the sentencing court on

whether to grant a furlough. There is no set of facts that could compel a sentencing court to

grant a furlough under the statute, so the argument that Plaintiff's facts show he has been

deprived a furlough right is without merit.

Lastly, since the discretion is with the sentencing court, it is unclear how Defendants

could have deprived Plaintiff of any liberty interest. Harris told Plaintiff on August 19 that the

request for a furlough had to go through the judge, so Plaintiff knew very quickly after informing

the Jail of his request that he had made the request to the wrong person. Since Defendants were

not in control of the process at that point, Defendants could not have deprived Plaintiff of his due

---

[2]Defendants cite *Burks v. Harris*, 56 F.3d 64 (6th Cir. 1995), but the Court in that case bases its opinion on Supreme Court precedent that has since been largely overruled. In *Sandin v. Connor*, 515 U.S. 472, 483 (1995), the Court explicitly rejected the "discretion" framework used in cases like *Burks*.

process rights.

## C.  Municipal Liability

Official capacity suits are merely another way to plead an action against the entity the individual represents.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  A local entity can only be held liable under § 1983 if the plaintiff suffers a constitutional injury that was the result of the policy or custom of that entity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  If there is no constitutional injury, then the municipality cannot be held liable even if there is a policy that might have authorized a constitutional injury.  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

In this case, since Defendants did not cause a constitutional injury to Plaintiff, Plaintiff cannot recover on an official capacity theory.  Since there is no constitutional interest in a furlough, the Jail cannot be liable under § 1983 for only granting furloughs with the permission of the sentencing court. Plaintiff's complaint that Defendants never provided a reason why his furlough was revoked is irrelevant, as Plaintiff was never granted a furlough.

## D.  State Law Violations

Plaintiff alleges violations of the following sections of Tennessee Code: § 41-4-111, 41-4-116, 41-4-138, 41-4-140, 41-4-144, 41-21-227, and 68-1-904.  (Docket Entry 51-2).  As stated in his pleading, Plaintiff requests an injunction to force compliance with these statutes.[3] Assuming that Plaintiff still has standing to request an injunction, Plaintiff has not alleged sufficient facts to show that the Jail is in violation of any of these statutes.

1.      § 41-4-111

---

[3]Defendants treat the violations as bases for negligence per se claims, but given Plaintiff's request to make the Jail conform with policy and the lack of injury to the Plaintiff, these are best seen as requests for injunctions.

This section states that jailers must remove all filth from each cell once every 24 hours. Plaintiff alleges that Harris violated this statute because the inmates received cleaning supplies about twice per week. However, this does not constitute a breach of the statute. The statute says nothing on how often inmates should receive cleaning supplies.

2. §41-4-116

This section states that the county may appoint jail inspectors in January of each year, and that these inspectors would decide all disputes between the jailer and the prisoners. Plaintiff argues that this statute has been violated because Harris decides disputes between the prison and the prisoners. However, the statute clearly grants counties the discretion on whether to appoint these inspectors. There has not been any breach of the statute.

3. §41-4-138

This section allows the sheriff to hire male and female nurses to perform examinations on prisoners, and that the female examine the female prisoners while the male examines the male prisoners. Plaintiff's argument seems to suggest that there is no longer a female nurse, so the Jail is in violation. However, this statute states that the sheriff is "empowered" to hire such a staff, so the sheriff has discretion on whether to do so. The Jail is not in violation of this statute. In addition, as a male, the deprivation of a female examiner likely does not constitute a sufficient injury-in-fact for standing.

4. §41-4-140

This section details how local jails must follow the minimum standards established by the Tennessee Corrections Institute. Plaintiff does not cite any specific standard that the Jail has failed to follow, so it is unclear what allegations Plaintiff intended to make.

5.    § 41-4-144

This section discusses the qualifications of correctional officers, including a prohibition against employing people with liquor-related violations on their record as correctional officers. Plaintiff argues that Stafford has violated this statute by employing someone with an alcohol-related violation as a correctional officer. However, Plaintiff has not named the officer in question, and has not pleaded any kind of injury relating to this hiring. Considering that Plaintiff has not plead sufficient facts to show a breach of the statute, let alone any injury-in-fact caused by that breach, no injunction can be granted.

6.    § 41-21-227

This section details how and when furloughs should be granted to inmates. However, the law is explicitly limited to prisons run by the Tennessee Department of Correction. Since Sheriff Stafford runs the Jail rather than the Department, this statute is inapplicable in this situation. Instead, local jails are governed by § 40-35-316, which is discussed in-depth in section B of this report.

7.    § 68-1-904

This statute discusses many rules regarding license to practice medicine. Plaintiff misquotes section (c)(1), which read as follows at the time of Plaintiff's incarceration: "The department of intellectual and developmental disabilities, may, based upon its determination of available resources and need, provide training for unlicensed individuals who administer medications to individuals incapable of self-administration." TENN. CODE ANN. § 68-1-904 (2010) (LexisNexis archive, amended effective Jan. 15, 2011). Later in that same section, the statute restricts this training to specific agencies licensed under Title 33 who provide services

related to mental retardation.

Since the Jail does not provide services related to mental retardation, this statute does not apply to the Jail. Even if it did, the statute clearly grants discretion to the department on whether to provide training. Plaintiff also fails to specify which officers, if any, are unlicensed and untrained but administer medication regardless. Plaintiff further fails to allege that the Jail's practices caused some kind of injury. As such, no injunction can be granted.

## IV. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED** with **PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 11th day of July, 2012.


/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge